IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TSI (USA) Inc., a Montana Corporation and  TSI Group, Ltd., a Hong Kong Corporation,<br><br>         Plaintiffs,<br><br>v.<br><br>Creative Compounds, LLC, a Foreign Limited Liability Company,<br><br>         Defendant. | Civil Action No. 1:14-cv-00017-CEJ<br><br><br>**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT** |

NOW COME the Plaintiffs TSI (USA) Inc. and TSI Group, Ltd. (collectively as "TSI") and pursuant to LR 7-4.01(B) file this memorandum in opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim Upon Which Relief Can Be Granted, or, In the Alternative, For a More Definite Statement.

    **I.**    **Legal Standard on Rule 12(b)(6) Motion to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court has held that a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but the pleader's obligation to state the grounds of entitlement to relief requires "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  When considering a motion to dismiss under Rule 12(b)(6) "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Williams v. Central Transport Intern., Inc.*, 4:13-cv-2009 CEJ, 2014 WL 1344513 (E.D. Mo. April 4, 2014)(citing *Bell Atlantic Corp. v. Twombly,* 550

#2458021

U.S. 544, 556 (2007) (*citing Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 n. 1 (2002)); *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"))(internal quotations and citations preserved).  "The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim." *Id.*

"To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level...'" *Parkhurst v. Tabor,* 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atlantic,* 550 U.S. at 555).  To put it another way, "the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" *B & B Hardware, Inc. v. Hargis Indus., Inc.,* 569 F.3d 383, 387 (8th Cir.2009) (quoting *Bell Atlantic,* 550 U.S. at 570). "This plausibility standard is met when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations omitted).  Although the standard "asks for more than a sheer possibility that a defendant has acted unlawfully," it is not "akin to a probability requirement." *Id.*  Even after *Bell Atlantic,* the Court must still "construe the complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.,* 514 F.3d 801, 806 (8th Cir.2008) (*post-Bell Atlantic* decision). Moreover, "specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *In re Bill of Lading*

2

*Transmission,* 681 F.3d at 1331 (citing *Erickson v. Pardus,* 551 U.S. 89, 93, (2007) (per curiam) quoting *Bell Atlantic,* 550 U.S. at 555).

## II. Facts Alleged in the Complaint Which Are Assumed True

Contrary to Defendant's assertion, TSI's Complaint alleges much more than formulaic recitations and conclusory statements. TSI's Complaint alleges the following facts relevant to the motion to dismiss:

- TSI develops and manufactures propriety ingredients and products for human and animal consumption. One of TSI's proprietary ingredients is Adenosine Triphosphate ("ATP"). (Complaint, docket no. 1, ¶ 3)

- TSI owns or possesses the rights for two patents that concern the use of ATP. They are United States Letters Patent: 7,671,038 ('038 Patent) and United States Letters Patent: 7,629,329 ('329 Patent). (*Id*. at ¶ 9, 10, 12)

- The '038 Patent covers a method for improving skeletal muscle functions by administering ATP to a human. (*Id*. at ¶ 12)

- The '329 Patent covers a method of increasing muscle strength by administering ATP to a mammal while participating in a strength training program. (*Id*. at ¶ 14)

- TSI licenses the patents to dietary supplement manufacturers and distributors, who incorporate TSI-sourced ATP into supplements, which are then marketed to athletes. TSI-sourced ATP is used by body builders, weight trainers and sports participants as a supplement "to reduce muscle fatigue and enhance human performance." (*Id*. at ¶ 17, 24, 26)

- PEAK-ATP is the registered trademark of TSI sourced ATP. (*Id.* at ¶ 19)

- If a TSI licensee uses non-TSI sourced ATP (i.e. ATP that is not PEAK-ATP) in products marketed to body builders and weight trainers, it infringes on the patents when the supplements are taken by the end user. (*Id.* at ¶ 17)

- Defendant has sold ATP and maintains a website selling ATP. Defendant has profited from the sale of ATP. (*Id.* at ¶ 18)

- Defendant does not get its ATP from TSI and is not licensed to sell PEAK-ATP. (*Id.* at ¶ 23, 24, 25)

3

- Defendant has been aware of TSI's patents on ATP since at least January 2010. In January 2010 TSI and Defendant had a series of emails which discussed TSI's patents which "cover the sports arena's use of ATP." On January 27, 2010 TSI sent a letter to Defendant explaining its patent rights and advising that the patents broadly cover methods for increasing muscle strength and muscle mass. (*Id.* at ¶ 23, 24, 25, 26)

- Despite knowledge of the patents-in-suit, TSI believes that Defendant has deliberately and intentionally targeted TSI's customers who use ATP for products which are covered by the patents, to sell them non-TSI sourced ATP. (*Id.* at ¶ 27)

- For example, in July 2013 Defendant contacted a TSI licensee that manufactures and sells products containing PEAK-ATP which are marketed to body builders, and offered to sell it non-TSI sourced ATP at a discounted rate. (*Id.* at ¶ 28)

- In the course of the conversation, Defendant told the TSI licensee that it had reviewed the TSI licensee's website before making its offer. The website in question clearly showed that the TSI licensee made and sold products used in the body building industry. The website even described the TSI licensee's ATP containing products as having "patent protected PEAK-ATP" which promoted strength and power and lean muscle mass. (*Id.* at ¶ 29)

- In other words, Defendant knowingly and intentionally offered and attempted to sell non-TSI sourced ATP to a company it knew was a TSI licensee, while also knowing that inclusion of non-TSI sourced ATP in that companies' products would result in direct infringement of TSI's patents when offered for sale or taken by the end user. (*Id.* at ¶ 17, 30)

- In August 2013 TSI sent Defendant a cease and desist letter again identifying the patents in suit and demanding the infringing activity stop. (*Id.* at ¶ 32)

- Defendant did not respond to the cease and desist letter. (*Id.* at ¶ 32)

- In light of the fact that Defendant has already intentionally sought out a TSI-licensee with the specific intent of selling them non-TSI sourced ATP to put in a product that Defendant knew would result in direct infringement of TSI's patents, TSI believes that Defendant has engaged in the same and similar conduct with other supplement distributors. In other words, it is TSI's belief, based on Defendant's prior proven conduct, that Defendant has offered to sell and has sold ATP to others to include it in products which they knew would and have resulted in patent infringement. (*Id.* at ¶ 30)

- TSI suffered damage as a result of Defendant's infringing conduct. (*Id.* at ¶ 34)

4

For the purposes of this motion to dismiss, these facts are assumed true, and the Court must construe the facts and inferences liberally in the light most favorable to TSI. *Williams*, 4:13-cv-2009 CEJ, 2014 WL 1344513; *Eckert,* 514 F.3d at 806.

### III.     Inducement to Infringe

Whoever actively induces infringement of a patent shall be liable as an infringer.  35 U.S.C. § 271(b).  The elements of inducement to infringe are that: "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent."   *Vita-Mix Corp. v. Basics Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009).  A party can be held liable for inducement of infringement if the end user, or customers, would directly infringe.  *C.R. Baird, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 673 (Fed. Cir. 1990).  The intent to encourage infringement can be shown by circumstantial evidence.  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006).

The Court of Appeals for the Federal Circuit has made clear that conduct which qualifies as actionable inducement under 35 U.S.C. § 271(b) is vast.  Such conduct "is as broad as the range of actions by which one fact causes, or urges, or encourages, or aids another to infringe a patent."  *Tegal Corp. v. Tokyo Electron Co., Ltd.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001). "Inducement does not require that the induced party be an agent of the inducer or be acting under the inducer's direction or control to such an extent that the act of the induced party can be attributed to the inducer as a direct infringer. It is enough that the inducer 'cause[s], urge[s], encourage[s], or aid[s]' the infringing conduct and that the induced conduct is carried out." *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012) *cert. granted*, 134 S. Ct. 895, 187 L. Ed. 2d 701 (U.S. 2014).  "A party who knowingly induces others to engage in acts that collectively practice the steps of the patented method—and those

5

others perform those acts—has had precisely the same impact on the patentee as a party who induces the same infringement by a single direct infringer; there is no reason, either in the text of the statute or in the policy underlying it, to treat the two inducers differently." *Id.* In other words, a defendant can be liable for inducement of a method patent even if it takes more than one party to perform all of the steps of the patented method.

The Federal Circuit Court has also conclusively established that a plaintiff <u>does not</u> need to identify a specific direct infringer at the pleading stage to adequately plead a claim for indirect infringement, like inducement to infringe:

> This court has upheld claims of indirect infringement premised on circumstantial evidence of direct infringement by unknown parties. *E.g., Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1318 (Fed.Cir.2009) ( "[T]he jury in the present case could have reasonably concluded that, sometime during the relevant period from 2003 to 2006, more likely than not one person somewhere in the United States had performed the claimed method using the Microsoft products."). **Given that a plaintiff's indirect infringement claims can succeed at trial absent direct evidence of a specific direct infringer, we cannot establish a pleading standard that requires something more**. **To state a claim for indirect infringement, therefore, a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists.** *E.g., Atwater Partners of Tex. LLC v. AT & T, Inc.,* No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D.Tex. Mar. 18, 2011) (holding that plaintiff's complaint does not need to identify a specific third-party direct infringer to state a claim for indirect infringement); *Oy Ajat, Ltd. v. Vatech Am., Inc.,* No. 10–4875, 2011 WL 1458052, at *4 (D.N.J. Apr. 14, 2011) (same).

*In re Bill of Lading,* 681 F.3d at 1336 (emphasis supplied). TSI, therefore, need only plead sufficient facts to allow an inference that at least one direct infringer exists to survive the pleading standards in regard to a claim for indirect infringement under 35 U.S.C. § 271(b).

Furthermore, Defendant's claim that there is no cause of action for attempted patent infringement or attempting to induce patent infringement[1] is deceptively oversimplified. It is

---

[1] See Defendant's memorandum in support of motion to dismiss, docket no. 14-1, FN 1, p. 5,

6

true there is no claim for attempted patent infringement or for inducement under 35 U.S.C. § 271(b).  However, United States Code section 271(a) states that the mere "offer to sell" a patented invention is patent infringement.  35 U.S.C. § 271(a).  The Federal Circuit has left open the question of whether a method claim can be infringed under the "offers to sell" prongs of 35 U.S.C. § 271(a).  *See NTP, Inc. v. Research In Motion, Ltd.,* 418 F.3d 1282, 1320–21 (Fed.Cir.2005) ("We need not and do not hold that method claims may not be infringed under the 'sells' or 'offers to sell' prongs of section 271(a)."); *see also Ricoh Co., Ltd. v. Quanta Computer, Inc.,* 550 F.3d 1325, 1334–35 (Fed.Cir.2008) (noting that *NTP* "explicitly did not decide the question of whether a 'method claim may not be infringed under the "sells" and "offers to sell" prongs of section 271(a),' " and also "conclud[ing] that we need not definitively answer this question").

## IV. Application of the Law to the Facts Asserted

The Complaint plausibly states a cause of action for patent infringement.  Defendant's attempt to force TSI to prove the case in the Complaint is not consistent with the pleading requirements established by the Federal Rules of Civil Procedure as explained by the Supreme Court.  At this stage in the pleadings, taking the facts and inferences in the light most favorable to TSI, there can be no doubt that TSI has satisfied its burden to survive a pre-answer motion to dismiss.

Again, the elements of inducement to infringe are that the defendant knew of the patent, knowingly induced infringing acts, and possessed a specific intent to encourage another's infringement of the patent.  *Vita-Mix Corp.*, 581 F.3d at 1328.  Taking the facts and inferences in the light most favorable to TSI, it is clear that the Complaint pled specific facts demonstrating TSI's patent rights, and Defendants knowledge of the patents.  In January 2010 TSI and

7

Defendant had detailed conversations via email about TSI's patents and what methods they covered.  (Complaint, docket 1-1, ¶ 23, 24, 25)  On January 27, 2010 TSI sent a letter to Defendant explaining its patent rights and advising that the patents broadly cover methods for increasing muscle strength and muscle mass.  (*Id.* at ¶ 26)  In light of the facts alleged, it is establisehd that Defendant was aware of the patents, for the purposes of this motion.

TSI pled specific facts about active attempts by Defendant to knowingly encourage another party's infringement of the patents.  In July 2013, Defendant contacted a TSI licensee that manufactured and sold products containing PEAK-ATP which were specifically marketed to body builders, and offered to sell it non-TSI sourced ATP at a discounted rate for inclusion in ATP products.  (*Id.* at ¶ 28)  Defendant admitted to TSI's licensee that it had reviewed their website, and thus knew that it was using "patent protected PEAK-ATP" in its body building supplements to promote strength and power and lean muscle mass.  (*Id.* at ¶ 29)  Defendant knew that if the TSI licensee used non-TSI sourced ATP in its products, it would cause the end user to directly infringe TSI's patents when the product was taken.  (*Id.* at ¶ 17, 30)  Taking these facts in the light most favorable to TSI, there is again no doubt that the allegations are sufficient to demonstrate that Defendant engaged in actions by which "cause[d], or urge[d], or encourage[d], or aid[ed] another to infringe a patent."  *Tegal Corp.* 248 F.3d 1379.   This is still actionable as inducement even though it would be the end user, and not the TSI licensee, that would ultimately be infringing the patents.  *Akamai*, 692 F.3d at 1308.

Moreover, contrary to Defendant's argument in the motion to dismiss, TSI's Complaint alleged that Defendant's actions resulted in direct infringement of the TSI patents.  TSI alleged, based on Defendant's prior proven conduct with the identified TSI licensee discussed above, that Defendant has engaged in the same and similar conduct with other supplement distributors, and

8

has sold ATP to other distributors for products which when taken by the end user did, in fact, infringe on TSI's patents. (Complaint, docket 1-1, ¶ 30).  In other words, TSI's Complaint does provide sufficient facts which support the plausible inference that there was direct infringement of its method patents by end users which occurred as a result of Defendant's inducement. Defendant's argument that TSI needs to specifically identify who directly infringed the method patents is simply a misstatement of the law.  See *In re Bill of Lading,* 681 F.3d at 1336 ("Given that a plaintiff's indirect infringement claims can succeed at trial absent direct evidence of a specific direct infringer, we cannot establish a pleading standard that requires something more. To state a claim for indirect infringement, therefore, a plaintiff need not identify a specific direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists").

Additionally, and in the alternative, the Federal Circuit has left open the question of whether a method claim can be infringed under the "sales" or "offers to sell" prongs of 35 U.S.C. § 271(a).  See *NTP, Inc.* and *Ricoh Co., Ltd.,* supra.  A strict reading of the statute supports the conclusion that Defendant would be liable for indirect infringement if one of Defendant's customer- suppliers incorporated non-TSI sourced ATP into a product whose purpose was for a use covered by the TSI patents and then offered to sell it, regardless of whether any product was actually sold.  TSI's Complaint also provides sufficient facts which support the plausible inference that there was direct infringement of its patents by this means, which occurred as a result of Defendant's inducement.  While, this particular theory of liability is undecided, but the Court should refrain from making a judgment on the issue at this stage in the litigation.

The Complaint alleges detailed specific facts which are much more than "mere labels or conclusions" in support of TSI's claims.  Keeping in mind that at this stage the Court must

9

construe a complaint liberally in the light most favorable to the plaintiff, *Eckert,* 514 F.3d at 806, and that a complaint must allege only enough facts to state a claim to relief that is plausible (not probable) on its face, *B & B Hardware, Inc.,* 569 F.3d at 387, the Court should deny the Defendant's pre-answer motion to dismiss.

> **V.    Arguments In Defendant's Motion that Are Not Addressed in Defendant's Memorandum, Including Claim Construction Arguments, Should Be Disregarded**

Defendant makes certain arguments in its motion that are not addressed at all in its memorandum.  For example, Defendant's motion attempts to make certain arguments on the alleged claim limitations and/or how TSI's patents claims should be constructed by the Court. (Defendant's Motion, docket no. 14, ¶ 8, 9, 11, 13, 14, 15).   Local Rule 7-4.01 requires a moving party to include "any relevant arguments and citations to any authorities to which the party relies" in its accompanying memorandum.  Because Defendant has utterly failed to address those arguments in its memorandum they should be considered abandoned and disregarded.  Likewise, Defendant should not be permitted to address these arguments in its reply brief.

Moreover, Defendant's arguments related to claim construction, which are notably absent of any citations to any law, are incorrect.  Contrary to Defendant's assertions, there is no obligation that TSI go through each and every element of the patent claims or use the precise language of the patents in its Complaint.  This is because for a claim alleging infringement of a method patent to survive a motion to dismiss for failure to state a claim, "there is no requirement that the facts alleged mimic the precise language used in a patent claim." *In re Bill of Lading*, 681 F.3d 1323, 1343.  All that is necessary is "that facts, when considered in their

entirety and in context, lead to the common sense conclusion that a patented method is being practiced." *Id*.

Defendant's arguments in its motion found in paragraphs 8, 9, 11, 13, 14 and 15 are also improper attempts at forcing the Court to engage in premature claim construction of the TSI patents. Defendant's motion wholly misconstrues the claims of the patents at issue, and essentially attempts to force the Court to decide issues at the pleading stage that are properly reserved for a *Markman*[2] hearing. A *Markman* hearing is appropriate "when the parties have presented a full picture of the claimed invention and the prior art." *Sofamor Danek Group Inc. v. DePuy-Motech, Inc.,* 74 F.3d 1216, 1221 (Fed. Cir. 1996). In the context of determining whether a *Markman* ruling was ripe, the Federal Circuit has considered whether the parties and the trial court "knew with a reasonable certainty which claim terms were at issue with respect to infringement." *Vivid Technologies, Inc. v. American Science & Engineering, Inc.,* 200 F.3d 795, 803 (Fed. Cir. 1999). Put another way, before a *Markman* issue is ripe, discovery and case management should have progressed to the point where the parties and the Court can be reasonably certain which claim terms are at issue. Clearly, the parties are not at that point in this litigation.

### VI.  Defendant's Motion for A More Definite Statement Should Be Denied

Defendant also moved for a motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) provides:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and

---

[2] A *Markman* hearing, named for the Supreme Court's ruling in *Markman v. Westview Instruments, Inc.*, is held in patent litigation by the court as a means of determining the scope of the claims at issue.  517 U.S.370 (1996).

11

> the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

As discussed above, the Complaint satisfies the pleading requirements of Rule 8. The Complaint is not vague, it is not ambiguous, and it reasonably appraises the Defendant of the cause and claims. Defendant's motion for a more definite statement should be denied.

### VII. Conclusion

TSI's Complaint satisfies the pleading requirements of Rule 8. Taking the facts in the light most favorable to TSI, the Complaint sufficiently pleads a plausible claim of patent infringement against Defendant. Contrary to Defendant's argument, TSI should not be forced to prove its case in its Complaint; the issue on a pre-answer motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of its case. The Court should decline from accepting or considering the Defendant's attempts at arguing about the alleged limitations or the scope of the claims, or engaging in premature claim construction. For these reasons, TSI respectfully moves to the Court to deny the Defendant's Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim Upon Which Relief Can Be Granted, or, In the Alternative, For a More Definite Statement. Assuming, *arguendo*, that the Court concludes that TSI's Complaint does not satisfy the Rule 8 pleading requirements, TSI moves the Court to grant it leave to amend.

/s/ Michael C. Richards
Michael C. Richards, *Admitted Pro Hac Vice*
DAVIS, BROWN, KOEHN,
 SHORS & ROBERTS, P.C.
215 10th Street, Suite 1300
Des Moines, Iowa  50309
Telephone: (515) 288-2500
Facsimile: (515) 243-0654
Email: mikerichards@davisbrownlaw.com

and

James F. Waltz
Oliver, Oliver & Waltz, PC
1838 Broadway
P.O. Box 559
Cape Girardeau, MO 63702-0559
Telephone: (573) 335-8278
Facsimile: (573) 334-6375
Email: jfwaltz@oliverlaw.com

ATTORNEYS FOR PLAINTIFFS
TSI (USA) INC. and TSI GROUP, LTD.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon counsel of record on this 7th day of May, 2014.

/s/ Michael C. Richards